UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| April Draper,<br><br>   Plaintiff,<br><br>vs.<br><br>Halifax Linen Service, Inc., Preston McElheney and Ernest Addington,<br><br>   Defendants. | CASE NO.: 2:25-cv-13852-RMG-MGB<br><br>**COMPLAINT**<br>**JURY DEMANDED** |

## COMPLAINT

April Draper ("Draper" or "Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendant Halifax Linen Service, Inc., ("Halifax") Preston McElheney and Ernest Addingson (collectively "Defendants") seeking to recover damages in accordance with Title VII of the Civil Rights Act of 1994, as amended ("Title VII") (42 U.S.C. § 2000e, et seq.) and the South Carolina Payment of Wages Act ("Payment of Wages Act") (S.C. Code Ann, §§ 41-10-10, et seq.).

## THE PARTIES

1. Plaintiff April Draper is a female and an adult citizen and resident of Charleston, South Carolina. At all times relevant, Draper was an employee of Halifax Linen Service, Inc., employed as a Territory Sales Manager and working in and around Charleston, South Carolina.

2. Plaintiff is informed and believes, and upon that basis alleges Defendant Halifax Linen Service, Inc. is a North Carolina Corporation, which maintains its principal place of business in Roanoke Rapids, North Carolina but also maintains in a location in Summerville, South

1

Carolina. Although Halifax does not appear registered to do business in the State of South Carolina, it regularly does business in the State of South Carolina.

3. Plaintiff is informed and believes, and upon that basis alleges that Defendant Preston McElheny is a resident of Halifax County, North Carolina. At all times relevant, Defendant McElheny was/is the President of Defendant Halifax. Upon information and belief, Defendant McElheny has been employed with Defendant Halifax since 1992.

4. Plaintiff is informed and believes, and upon that basis alleges that Defendant Ernest Addington is a resident of Nash County, North Carolina. At all times relevant, Defendant Addington was/is the Chief Operations Officer of Defendant Halifax. Upon information and belief, Defendant Addington has been employed with Defendant Halifax since June 2006.

5. At all times relevant, Defendants were Plaintiff's employer as defined by both Title VII and the Payment of Wages Act (S.C. Code Ann. § 41-10-10(1)).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's allegations of violation of Title VII of the Civil Rights Act, as amended. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States.

7. In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 over Plaintiff's allegations of violations of the Payment of Wages Act, which are brought pursuant to the law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

8. This Court has personal jurisdiction over the Defendants because they each have continuous and systematic contacts with the State of South Carolina by consistently doing business in South Carolina. Defendant Halifax maintains a location in Summerville, South Carolina.

Moreover, Defendants hired and employed Plaintiff knowing that she lived in South Carolina and would be performing her duties for Defendants in South Carolina.

9. Venue is proper within this District and Division because the causes of action alleged to have occurred in this Complaint occurred in Charleston County.

10. Plaintiff timely filed a Charge of Discrimination against Halifax on or about May 24, 2025, with the Equal Employment Opportunity Commission (EEOC) for gender discrimination and retaliation under Title VII (415-2025-01638), which included allegations substantially similar to the ones included herein based on the same set of facts. Plaintiff received a Dismissal and Notice of Right to Sue Defendant from the EEOC on September 17, 2025. Thus, Plaintiff has exhausted her administrative remedies under the EEOC as to Defendant Halifax Linen Servivce, Inc.

## RELEVANT FACTS

11. The allegations of the preceding paragraphs are hereby incorporated and alleged as if fully set forth herein.

### Background on Plaintiff's Exemplary Employment

12. Plaintiff was employed by Halifax beginning in May 2022 as a Territory Sales Manager working in the Charleston, South Carolina area.

13. Throughout her tenure with Halifax, Plaintiff's performance was stellar, consistently meeting and exceeding the sales quota Halifax set for Plaintiff in each of the three years she was employed.

14. Within months of beginning her employment, Plaintiff was the leading salesperson for the third quarter of 2022 and was named Rookie Sales Representative of the year.

15. Plaintiff was further recognized as being top performer for the first and third quarters in March and September 2023.

16. Plaintiff was the top performing salesperson in the company both in 2023 and again in 2024, even at the time her employment was terminated.

17. In 2024, Plaintiff rapidly met her annual sales quota by March, leaving her to significantly exceed her quota.

## Initial Compensation Structure

18. When Plaintiff began her employment, she was paid via quarterly bonuses.

19. In or around April 2023, Plaintiff's supervisors, Halifax COO Ernest Addington and Regional Sales Director Tony Engelking, changed Plaintiff's compensation structure from a quarterly bonus to commission-based compensation with a $15,000 per year cap on each account Plaintiff signed for Halifax.

## The Wild Dunes Account

20. Shortly after beginning her employment, Plaintiff began working to land an account with the Wild Dunes Resort. Upon landing this account, it would have been the largest account Halifax ever had.

21. Plaintiff established connections at Wild Dunes and worked diligently for almost two years to secure the account. In January 2024, after almost two years of work to land the account, Wild Dunes agreed to sign a 36-month contract with Halifax.

22. In multiple meetings while Plaintiff was working on signing Wild Dunes, she was instructed by Regional Sales Director Tony Engelking to set up each entity within Wild Dunes as a customer within the Dunes account (12 separate entities in total) so that she could maximize her compensation and avoid the commission cap on the consolidated entity as a whole.

23. According to this structure, the $15,000 commission cap would apply to each of the 12 entities, making Plaintiff eligible to earn up to $180,000 in commissions from the Wild Dunes account in the first year of the contract.

24. Upon information and belief from Regional Sales Director Tony Engelking, Bobby Schuup, a male sales representative of Halifax, set up the contract with Bald Head Island in North Carolina in the same manner with multiple customer records to maximize commission and avoid the cap. Mr. Schuup was allowed to maintain this commission structure and was paid according to the agreed-upon terms.

25. Upon finally securing the Wild Dunes account for Halifax, Plaintiff finalized the Wild Dunes account in twelve separate contracts. Several management level employees signed off on the contracts, including Halifax's General Manager and Brian Richards, the Food and Beverage Director for Wild Dunes. In February 2024, the account was installed by Plaintiff, Regional Service Director Randy Haywood, who has been employed by Halifax since May 2006, Defendant Addington, and Ed McClain.

**Defendant's Breach of Commission Agreement and Discriminatory Treatment**

26. On or about March 2, 2024, without any warning, Plaintiff was removed from the Wild Dunes account by Defendant Addington and told to have limited contact with Wild Dunes representatives.

27. The next day, Halifax began making deliveries to Wild Dunes two days per week instead of the one-day delivery that had been contracted, as Wild Dunes had requested the total orders be split into two deliveries per week.

28. However, Halifax quickly doubled the delivery inventories and billed Wild Dunes double the contract amount, putting the account in jeopardy.

5

29. When Plaintiff inquired about the error, she was told that it was being handled and she was prohibited from contacting Wild Dunes, even though Plaintiff likely could have easily resolved the matter due to her long-standing relationship with the client.

30. On or about March 11, 2024, Plaintiff was informed that the first half of the commission she earned through the Wild Dunes account, which should have been $20,905.00 even after two of the accounts were moved into a "house account" and removed from Salesforce, was being capped at $15,000 for the entire Wild Dunes account, not $15,000 per entity as originally agreed.

31. On or about March 12, 2024, Halifax, Defendants proposed a commission payment of $10,000 for the first commission payment and $15,000 for the second commission payment in July 2024.

32. Plaintiff was forced to sign the "proposed" new commission agreement under duress and expressed her dissatisfaction that the original commission agreement was not being honored.

33. In or around April 2024, Defendants changed the entire structure of the Wild Dunes contract without informing Plaintiff. This new structure created by Defendants completely negated Plaintiff's original commission structure.

34. Plaintiff protested to both Addington and Engelking regarding the Company's breach of the original commission agreement.

**Retaliation against Plaintiff**

35. After Plaintiff protested the discriminatory changes to her commission structure, she began experiencing backlash and retaliation from Halifax.

36. In or around July 2024, although Plaintiff had already well exceeded her annual sales quota, she was written up by Engelking for not meeting her quarterly quota.

37. In or around the end of July 2024, Plaintiff was informed that she would receive no more payouts on the commission from the Wild Dunes account. Plaintiff again protested and demanded to be paid the originally agreed upon commission.

38. On or about July 31, 2024, Defendant Addington called Plaintiff and invited her to propose what she thought would be a fair commission payout. A meeting with Engelking followed on or about August 27, 2024, where Plaintiff was offered a final commission payout for Wild Dunes in the amount of $7,500 and was forced under duress to sign the payout or risk losing everything. Plaintiff should have earned approximately $50,000 in commissions from the Wild Dunes account at the time of her termination.

39. Continuing its pattern of retaliation, and less than one month after the reduced commission payout, Engelking informed Plaintiff in or around September 2024, that her territory would no longer be the greater Charleston area. Instead, Plaintiff was assigned to the Hilton Head/Beaufort/Savannah territory and was replaced by a male employee with no experience from Virginia after Plaintiff had spent three years successfully developing the Charleston market.

40. Upon information and belief, Defendants believed Plaintiff would resign rather than accept the assignment to the new, less lucrative territory, located over two and a half hours away from Plaintiff's home. Plaintiff was also expected to drive back and forth every day. Plaintiff accepted the assignment and was told that she would have until the end of the year to reach 85% of her quota in the new territory to remain employed.

41. Within two weeks in her new territory, Plaintiff was well on her way to reaching the stated quota for the fourth quarter after closing two sales and had three pending sales.

Nonetheless, on or about October 21, 2024, Engelking terminated Plaintiff's employment for alleged performance reasons, with extreme disregard to Plaintiff's position as the Halifax's top sales representative for 2024.

**Gender based discrimination**

42. Throughout Plaintiff's employment, male employees were treated more favorably than Plaintiff in nearly every respect.

43. In the six months before her termination, at least five of Plaintiff's male co-workers received brand new company vehicles. Meanwhile, Plaintiff's company vehicle was a 2015 Toyota Corolla with 178,000 miles, which broke down frequently hours away from her home office leaving Plaintiff forced to use her personal vehicle for company business.

44. Several male co-workers were consistently under quota each quarter, yet not one was written up or terminated.

**FIRST CAUSE OF ACTION**

**(Discrimination Based on Gender in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)**

**(against Defendant Halifax)**

45. Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

46. Based on the above-described acts, practices and omissions, and through its agents and representatives, Halifax engaged in unlawful discrimination under Title VII based on Plaintiff's sex (female).

47. Furthermore, Halifax subject Plaintiff to disparate treatment on the basis of her sex by:

a. Unilaterally and discriminatorily changing her commission structure to prevent her from earning commissions comparable to or exceeding those of male employees;

b. Refusing to honor the originally agreed-upon commission structure for the Wild Dunes account while honoring similar commission structures for male employees;

c. Providing male employees with new company vehicles while denying Plaintiff a new vehicle;

d. Subjecting Plaintiff to higher performance standards than male employees who consistently perform below the annual quota; and

e. Demoting Plaintiff by assigning her to a less lucrative territory.

48. Halifax's reasons for its adverse employment actions against Plaintiff, including the changes to her commission structure and her termination, are pretextual. Halifax's discriminatory conduct was intentional, willful, and done with malice or reckless indifference to Plaintiff's protected rights.

49. As a direct and proximate result of Halifax's unlawful discrimination, Plaintiff has suffered and continues to suffer substantial non-economic damages, including but not limited to emotional distress, mental anguish, humiliation, and damage to her professional reputation.

**SECOND CAUSE OF ACTION**

**(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)**

**(against Defendant Halifax)**

50. Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

51. By the above-described acts, Plaintiff engaged in activity protected by Title VII by voicing opinion opposing discriminatory practices by Halifax and by protesting the discriminatory changes to her commission structure, demanding Halifax honor the original commission structure, asking Halifax to put its discriminatory decisions in writing, and refusing to accept the discriminatory commission changes without protest.

52. By the above-described acts, practices, and omissions, Halifax violated Plaintiff's rights under Title VII, 42 U.S.C. 2000e-3(a) as it knew or should have known about the alleged discriminatory activity. Further, a casual connection existed between the Plaintiff's protected activity and the adverse employment actions against her.

53. As a direct and proximate result of defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer substantial economic damages including but not limited to emotional distress, mental anguish, humiliation, and damage to her professional reputation.

**THIRD CAUSE OF ACTION**

**(Violation of the South Carolina Payment of Wages Act**

**S.C. Code Ann. § 41-10-10)**

**(against all Defendants)**

54. Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

55. Pursuant to S.C. Code Ann. Section 41-10-10 provides that "[e]very employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

56. Pursuant to S.C. Code Ann Section 41-10-10(1), an "employer" as "every person, firm, partnership, association, corporation, receiver, or other officer of a court of this State, the

State or any political subdivision thereof, and any agent or officer of the above classes employing any person in this State."

57. Pursuant to S.C. Code Ann. Section 41-10-10(2), "Wages' means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, place, or commission basis, or other method of calculating the amount…"

58. Pursuant to S.C. Code Ann. § 41-10-40(C), an "employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of Section 41-10-30."

59. Pursuant to S.C. Code Ann. § 41-10-80(C), an employee who has not been paid in accordance with the South Carolina Payment of Wages Act "may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."

60. At all times relevant to the action, Halifax was the employer of Plaintiff, covered by the wage mandates of the South Carolina Payment of Wages Act.

61. At all times relevant, Defendant McElheney was an agent and officer of Defendant Halifax and is thus, defined as Plaintiff's employer under the South Carolina Payment of Wages Act.

62. At all times relevant, Defendant Addington was an agent and officer of Defendant Halifax and is thus, defined as Plaintiff's employer under the South Carolina Payment of Wages Act.

63. Halifax agreed to pay Plaintiff commissions on the Wild Dunes account according to the structure established when Plaintiff signed the account, $15,000 per customer records, with 12 customer records established for the Wild Dunes Account.

64. Halifax failed to pay Plaintiff all wages due to her as set forth in the original commission agreement, and due to her under the Payment of Wages Act.

65. Defendant McElheny, as an officer and agent of Halifax, knowingly permitted Halifax to violate the Act by failing or refusing to timely pay Plaintiff her wages due.

66. Defendant Addington, as an officer and agent of Halifax, knowingly permitted Halifax to violate the Act by failing or refusing to timely pay Plaintiff her wages due.

67. Plaintiff has suffered economic loss as a result of being denied compensation by Defendants.

68. Defendants' refusal to compensate Plaintiff for the wages owed to her is willful and as a result, Plaintiff is entitled to (1) all amounts due to them; (2) treble damages up to three times the amount of unpaid wages; and (3) attorney's fees.

WHEREFORE, Plaintiff April Draper prays for judgement against Defendants, Halifax Linen, Inc., Preston McElheney and Ernest Addington, in a just and equitable sum of actual, compensatory, treble and punitive damages, for the costs of this action including attorney's fees, and for such other and further relief as a jury and/or this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

BRETT M. EHMAN
Attorney at Law

December 12, 2025                    /s/ Brett M. Ehman_____

Brett M. Ehman
Fed Bar No.:  12844
S.C. Bar No.:  102443
2971 West Montague Avenue
Suite 203
North Charleston, SC  29418
(843) 225-3607
brett@ehmanlaw.com

Attorney for Plaintiff

13